**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IMANE ABDUL IMAM KHREISS,

      *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant.*

_____/

CASE NO. 2:17-cv-11246

DISTRICT JUDGE SEAN F. COX

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 19, 21)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff Imane Abdul Imam Khreiss is not disabled. Accordingly, **IT IS RECOMMENDED** that Khreiss's Motion for Summary Judgment, (Doc. 19), be **DENIED**, the Commissioner's Motion, (Doc. 21), be **GRANTED**, and the decision of the Commissioner of Social Security (Commissioner) be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

1

After the Court issued a Report and Recommendation on the parties' cross motions for summary judgment recommending a remand per 42 U.S.C. § 405(g), Defendant's first objection to the Report was sustained. (Doc. 27.) The case is presently before the Court for reconsideration of the parties' motions for summary judgment. (Doc. 27.)

On April 28, 2014 and April 29, 2014, respectively, Plaintiff filed applications for DIB and SSI alleging a disability onset date of September 6, 2013. (Tr. 172-73, 180-85.) The Commissioner denied her claims. (Tr. 85-108.) Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which occurred on July 23, 2015, before ALJ Ethel Revels. (Tr. 37-84.)   The ALJ issued a decision on November 3, 2015, finding Plaintiff not disabled. (Tr. 16-36.) On March 1, 2017, the Appeals Council denied review, (Tr. 1-6), and Plaintiff filed for judicial review of that final decision on April 20, 2017. (Doc. 1). Plaintiff filed the instant Motion for Summary Judgment on September 19, 2017, (Doc. 19), and the Commissioner countered with its own Motion on November 17, 2017, (Doc. 21).

### B.   Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.  Framework for Disability Determinations

"DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; 20 C.F.R. § 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual

4

functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241

(citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.  ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled

under the Act. (Tr. 19-31.) At step one, the ALJ found that Plaintiff's date last insured was

December 31, 2013, and that she had not engaged in substantial gainful activity since her

alleged onset date of September 6, 2013. (Tr. 21.) At step two, the ALJ concluded that the

following impairments qualified as severe: cervical spine disorder, lumbar spine disorder,

anxiety disorder, and depressive disorder. (Tr. 22.) The ALJ also decided, however, that

none of these met or medically equaled a listed impairment at step three. (Tr. 22-24.)

Thereafter, the ALJ found that Plaintiff had the residual functional capacity (RFC) to

perform light work with the following additional limitations:

> limited to simple, routine tasks, such as those jobs at the SVP 1 or 2 level due
> to occasional limitations in ability to maintain concentration for extended
> periods but not off task for more than 10% of the workday; unable to
> understand, remember, and carry out detailed instructions because of
> depression and anxiety; no climbing of scaffolds, ropes, or ladders; no ability
> to read, calculate, or write efficiently in the English language; frequent flexion
> and extension of the neck; no operation at hazardous heights or around
> dangerous machinery; no operating in temperature extremes; no use of foot
> pedals; frequent stooping and climbing of ramps and stairs; and no crawling.

(Tr. 24.) At step four, the ALJ found Plaintiff unable to perform any past relevant work.

(Tr. 29.) Proceeding to step five, the ALJ determined that there are jobs that exist in

significant numbers in the national economy that the claimant can perform. (Tr. 29-31.)

### E.      Administrative Record

#### 1.      Medical Evidence

The Court has reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.      Application Reports and Administrative Hearing

##### i.      Third-Party Function Report

The record contains a Third-Party Function Report filled out by Zeinab Ghadda, Plaintiff's daughter, on May 26, 2014. (Tr. 235-42.) Ms. Ghadda described her mother's condition as impeding her ability to stand or bend. (Tr. 235.) "She cannot cook, clean, or do anything that uses a lot of physical movement" and her "depression keeps her from being able to leave the house unless it is necessary like a doctor's app[ointment], etc." (*Id.*) She did little each day because "she breaks down, cries, is in pain." (Tr. 236.) She cared for her two younger daughters, aged seventeen and seven, though Ms. Ghadda helped her "with everything they need." (*Id.*) Her condition interfered with her ability to engage in personal care activities. (*Id.*) In addition, Plaintiff was "unable to sleep" because "she has insomnia," and "she zones out a lot." (*Id.*)

Ms. Ghadda elaborated that Plaintiff could not "stand for over 10 min[utes]" because her "hands [and] feet become numb [and] her neck [and] back start to hurt." (Tr. 237.) She was unable to do house or yard work. (*Id.*). "Her back and neck disc limit her from doing physical work. Her depression [and] anxiety keep her from being in the mood to do anything." (Tr. 238). She could drive for short periods of time. (*Id.*) She did not go

6

shopping, but she retained the capacity to handle her finances. (*Id.*) She had no hobbies because her "depression and anxiety keep her from doing or enjoying anything at all." (Tr. 239.) She also participated in no social activities. (*Id.*) "She does not like to see anyone or have anyone over or go out. She is very depressed." (Tr. 240.) Nevertheless, Ms. Ghadda marked "No" when asked whether Plaintiff had "any problems getting along with family, friends, neighbors, or others," (*Id.*), and indicated that she got along "[w]ell" with authority figures, (Tr. 241).

Prompted to mark abilities Plaintiff found difficult, Ms. Ghadda marked: lifting squatting, bending, standing, reaching, walking, kneeling, stair climbing, memory, completing tasks, and concentration. (Tr. 240). Summarizing, Plaintiff wrote that "[s]he can lift two pounds, she cannot squat, bend, or reach, she has to[o] much pain, she can stand for 10 min[utes] max[imum], she can walk for 5-10 min[utes]. She cannot kneel or climb more than 4 steps. She has bad memory [and] trouble completing tasks. She cannot concentrate." (*Id.*) Despite her poor memory, Plaintiff could follow written and spoken instructions well. (*Id.*) She could not handle stress or changes in routine well. (Tr. 241.) She used a cane prescribed "[o]ne year and a half" prior to Ms. Ghaddar's writing. (*Id.*)

### ii.      Plaintiff's Testimony at the Administrative Hearing

Plaintiff opened her testimony by furnishing some background information. She was forty-seven years old, and had progressed through the tenth grade in school. (Tr. 45.) She previously worked at an accounting office, and her duties included "drop[ping] papers off for [one of the accountants] and pick[ing] things up." (Tr. 47.) She also ran errands for him and straightened out his desk and office. (Tr. 48-49). She was unable to read or write in

7

English: "I can copy if you ask me to copy, but that's all I can do. But if you read and [I] wr[i]te, no." (Tr. 51.) At the time of the hearing, she lived in a two-story house with her two youngest daughters, aged eighteen and eight years old. (Tr. 52.)

Plaintiff attributed her pain to "a herniated disc . . . in my neck and my back. And the doctor said I need surgery on my neck and surgery on my back. And then on my right leg, the nerves are dying on it. And that's why I can't stand more than three minutes to stand up or maximum five." (Tr. 53.) Specifically, Plaintiff noted pain in her neck, shoulders, hands, legs and back, as well as numbness in her hands and feet. (*Id.*) Without medication, she rated her pain as a ten in severity on a scale from one to ten. (Tr. 53.) With medication, her pain reached an eight in severity. (Tr. 54.) "I would never have been able to walk if I didn't take my medication," *i.e.*, Ultram, Naproxen, Seroquel 400, Ativan, and Cymbalta, "because I have emotional problems, anxiety and depression." (*Id.*) She regularly forgot to take her medication and her daughter "gives it to me" about four times per day. (Tr. 55.) She could only carry about three pounds at once. (Tr. 55-56.) She laid down for approximately nine hours each day because "the medications for my depression and anxiety keep me sleepy." (Tr. 56.) She could walk for five minutes before numbness overtook her feet. (Tr. 57.) In general, she could not prepare food, though she indicated a limited ability to "fry an egg," make a sandwich, or use the microwave. (*Id.*)

Getting around her house proved difficult, as she could neither go downstairs nor upstairs. (Tr. 58.) Her doctor, Dr. Berri, prescribed her a cane to assist in walking. (Tr. 59.) "I use it at home, going to the bathroom if my daughter is asleep. So I use it when I leave the house because I have four steps to get down and that's why I use it." (*Id.*) Although her

8

doctor had recommended surgery, she had decided to forgo it "[b]ecause I'm scared." (*Id.*) She had no friends and engaged in no social activities. (Tr. 59-60.) She occasionally drove her children to school, or drove to the doctor's office or the store, all of which were located mere minutes from her house. (Tr. 64.) She did not go into the store herself because she could walk only up to five minutes and "I can't push the buggy." (Tr. 65.) She left the house only in cases of "absolute necessity because I don't like to leave the house." (Tr. 66.) Her daughter helped her with all personal care activities (*i.e.*, showering, cleaning her hair, dressing, etc.). (*Id.*) Her daughter also helped her remember to take medication: "she brings me something to eat [in the morning] and she gives me the medications, Ultram and Naproxen. And at night, she gives me the Ativan." (Tr. 67.)

Pain and nightmares frequently stirred Plaintiff from slumber. (*Id.*) For this reason, she spent at least three hours a day napping. (Tr. 68.) "I don't have a bed. We only have mattresses and that's why I lie on the couch that opens up, because if I lie on the floor, I can't get up. My daughter has to get me up." (*Id.*)

### iii.        The VE's Testimony at the Administrative Hearing

The VE first classified Plaintiff's past work as an "office helper," "light, unskilled, SVP 2." (Tr. 70.) The ALJ then posed her first hypothetical, asking the VE to imagine an individual who

> could perform work at the medium exertional level, but there are the additional limitations that our hypothetical claimant needs work that is simple, routine tasks, such as those jobs at the SVP 1 or 2 level because of occasional limitations in ability to maintain concentration for extended periods, but not off task more than 10% of the day because of pain, as well as unable to understand, remember and carry out detailed instructions because of . . . depression and anxiety. That work must not require climbing

> of scaffolds, ropes or ladders . . . there must not be any requirement to read, calculate or write in English. That work must not require more than frequent flexion and extension of the neck, no operating at hazardous heights or around dangerous machinery, no operating in temperature extremes, no use of foot pedals. It must allow for frequent stooping and climbing of ramps and stairs, but no crawling.

(Tr. 70-71.) The VE identified the following medium-exertional-level jobs: "housekeeping cleaner" (with 385,000 national jobs and 9,000 local jobs), "janitor and cleaner" (with 1,093,000 national jobs and 35,000 local jobs), and "industrial sweeper, cleaner" (with 50,000 national jobs and 1,500 local jobs). (Tr. 71-72.) As for jobs at the light exertional level, the VE provided several further examples: "hand packager" (with 350,000 national jobs and 9,000 local jobs), "housekeeping cleaner" (with 385,000 national jobs and 9,000 local jobs), and "stock clerk" (with 230,000 national jobs and 8,000 local jobs). (Tr. 72.)

In the second hypothetical, the ALJ incorporated all limitations included in the first hypothetical, except that "in addition . . . [the] hypothetical claimant also needed the use of a cane for walking." (Tr. 73.) The VE said that such a person could not perform any jobs he was aware of. (*Id.*)

The ALJ's third hypothetical incorporated all limitations included in the first hypothetical, except also "occasional crouching, kneeling, stooping as well as occasional climbing of ramps and stairs." (Tr. 73-74.) The VE noted that such an individual would still be able to perform any of the work the first hypothetical claimant could perform except for "hospital cleaner"—instead, the job of "stock clerk" at medium exertion (with 90,000 national jobs and 3,000 local jobs) would be available. (Tr. 74-75.)

The ALJ's fourth hypothetical incorporated all limitations from the first and third, but added that the "claimant also needs a sit/stand option" not to "exceed 30 minutes" at once on an alternating basis. (Tr. 76-77.) Such a person could not maintain competitive employment if his or her standing breaks would exceed six minutes each hour. (Tr. 80.)

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] establish five categories of evidence: (1) "objective medical evidence," such as laboratory findings; (2) "medical opinions" from medical sources concerning the claimant's abilities; (3) "other medical evidence" not encompassed by the first two categories, such as "judgments about the nature and severity of [the claimant's] impairments"; (4) "evidence from nonmedical sources," including from the claimant; and (5) "prior administrative medical findings" from "medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a); 20 C.F.R. § 416.913(a).

---

[1] Various amendments have been made to the regulations since Plaintiff filed her claim. See, e.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as many of the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs*, 459 F.3d at 647 (6th Cir, 2006) (plurality opinion)—it is unnecessary to determine whether they apply. Some of the new regulations make explicit provision for retroactive or prospective application, but others (including the more general rules on the categorization of evidence) do not. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016). For purposes of this background section, I will lay out the categories of evidence from the new regulations. I will also cite to the new regulations when there has been no meaningful change in the text.

The second category, "medical opinions," is defined for purposes of claims made before March 27, 2017 (like Plaintiff's here) as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). The test looks at whether the source of the opinion examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.916(c).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the

12

nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.916(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.916(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the claimant's credibility, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16,

the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2017); 20 C.F.R. § 416.929 (2017); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*,

---

2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.926(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing the RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). The RFC "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2). A

hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff raises three arguments: (1) that the ALJ unreasonably discounted the opinion of Dr. Berri, Plaintiff's treating physician, and "played doctor" in drawing her own conclusions from the medical evidence, (Doc. 19 at 17-22); (2) that the ALJ failed to consider evidence that Plaintiff's medications and sleep deprivation produced fatigue that limited her capacity to work, (*Id.* at 21-22); and (3) that the ALJ failed to corral substantial evidence for her findings as to Plaintiff's social functioning, (*Id.* at ID 22-25). I address each argument in turn.

### 1.    The ALJ's Treatment of Dr. Berri

Plaintiff first argues that the ALJ failed to give good reasons in discounting the opinion of Dr. Berri—Plaintiff's treating physician—and further played doctor in drawing her own medical conclusions from the record evidence. (Doc. 19 at 17-21.) Specifically, she contends that "the ALJ reviewed the findings rendered by Dr. Berri himself, but chose to give them different significance than did the doctor. This is inappropriate." (*Id.* at 19.) She notes, for instance, that the ALJ is correct in observing the absence of a prescription for a cane, but ignores that "Dr. Berri himself indicated that plaintiff needed one . . . and plaintiff testified that the doctor prescribed it." (*Id.* at n.3, citing Tr. 58-59, 619-20.)

16

The ALJ's fairly extensive discussion of Dr. Berri's opinion supplies good reasons to discount his findings. In the ALJ's view, Dr. Berri's RFC assessment assigned to Plaintiff limitations disproportionate to the record as a whole and even his own notes, including notes directly preceding the issuance of his opinion. (Tr. 28.) The ALJ summarized this evidence at some length earlier in her opinion as well, and the record corroborates her findings. During many, if not most, sessions, Dr. Berri observed that Plaintiff had full range of motion and no tenderness in the cervical and lumbar spine. *E.g.*, (Tr. 289, 291, 294, 299, 305, 311, 318, 553, 556, 558, 563, 566, 569, 575, 622, 624, 626, 628, 630, 635, 640, 643, 647, 654-656, 658, 661, 663, 671, 673, 675, 677, 679-80, 685); see also (Tr. 484) (noting normal musculoskeletal and neurological examination with full range of motion and no local tenderness in lumbar spine); (Tr. 582) (noting normal spinal balance); but see (Tr. 296, 302, 308, 633, 638, 649, 668, 683, 688, 691) (finding tenderness and pain with movement.) Dr. Berri's exaggerated RFC assessment is further demonstrated by his suggestion that Plaintiff's limitations had persisted for four years prior to July 2015, (Tr. 620), which if true should have precluded Plaintiff's full-time working schedule from 2010 to 2013, (Tr. 216) (listing as prior work an accounting job between January 2011 and September 2013).   In addition, Dr. Berri's check-box opinion contained no narrative explanation as to why his notes led him to the conclusions he reached, rendering his findings without evidentiary support in the record and, therefore, underserving of more weight. *Cf. Hernandez v. Commissioner of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) ("Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the [medical source statement] here is 'weak

evidence at best' and meets our patently deficient standard." (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010))).[3]

For these reasons, the Court should reject Plaintiff's first argument.

### 2.    The ALJ's Consideration of Plaintiff's Fatigue

Plaintiff next contends the ALJ committed "reversible error" when she failed to credit evidence of Plaintiff's fatigue and incorporate accompanying limitations into the RFC assessment. (Doc. 19 at ID 782.) As support for this argument, she cites a note from Dr. Berri and Plaintiff's testimony that "her medications made her 'tired and sleepy all the time[.]'" (*Id.* citing (Tr. 616) and quoting (Tr. 55)).)

This argument cannot prevail. For reasons discussed above, the  notation on fatigue fails to offer any support of limitation, as it appears on a check-box form unaccompanied by any explanation linking it to the evidence of record. Further, the ALJ found Plaintiff's statements unreliable, a finding Plaintiff declines to challenge and therefore waives any

---

[3] In her Motion for Summary Judgment, Plaintiff argued that Dr. Berri was "the only medical source rendering an opinion as to plaintiff's limitations."  (Pl. Mot. at 20.) She then noted that a single decisionmaker (SDM), Val Jannett, also opined on Plaintiff's limitations, but that an SDM's opinions did not constitute valid evidence. *Id.* See generally *Arnold v. Comm'r of Soc. Sec.*, No. 13-13468, 2015 WL 477379, at *11 (E.D. Mich. Feb. 5, 2015) ("Any findings made by an SDM are not to be used as opinion evidence at the appellate level, since SDMs, as lay persons, are not acceptable medical sources or non-medical sources of opinion evidence under 20 C.F.R. § 404.1513, § 404.1527(a)(2), or SSR 06-[0]3p."). My initial Report and Recommendation asserted that the ALJ improperly relied upon the SDM's opinion, thus meriting remand. But both parties now agree that the ALJ was actually referring to a report from a psychological consultant, not the SDM's findings. (See Tr. at 100-101.); (Pl. answer to Def. Objections, at 2.) Accordingly, it is apparent that the ALJ did not impermissibly rely on the SDM's opinion and that remand is not warranted on this ground.

objection to. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted))). The ALJ plainly addressed Plaintiff's medication at several points in her opinion, (Tr. 26-27); without a more concrete showing of what in the record supports Plaintiff's allegations—and what the resulting limitation should have been—I am not inclined to agree with Plaintiff's argument on this count. *Cf. Jackson v. Comm'r of Soc. Sec.*, No. 09-14089, 2011 WL 768087, at *1 (E.D. Mich. Feb. 28, 2011) (rejecting a similar argument where the claimant could not "specifically point to record evidence of particular limitations that should have been incorporated into his RFC but were not").

Accordingly, the Court should find the instant argument unavailing.

### 3.    The ALJ's Findings as to Plaintiff's Social Functioning

Plaintiff's final argument is that the ALJ erred by finding that Plaintiff had only mild difficulties with social interaction. She highlights, for instance, her testimony that she was "'always scared and paranoid,'" Ms. Ghadda's statement that she "did not leave the house unless it was absolutely necessary," and the "ACCESS record" (on which the ALJ relied) which indicated "she had meaningful relationships with her children but had no friends and isolated herself." (Doc. 19 at 23, citing (Tr. 23, 58-60, 235, 240).) "That [Ms. Ghadda] checked the 'yes' box to a question of whether plaintiff got along with family,

19

friends, neighbors, or others . . . and also gets along 'well' with authority figures . . . does not change her mother's obvious social limitations." (Doc. 19 at 24, citing (Tr. 240-41).)

The amount of evidence regarding Plaintiff's social functioning is slim, but there was sufficient support for the ALJ's result. Most significantly, the ALJ appropriately relied on the assessment by the state agency psychological consultant, Dr. Morrow, who found that Plaintiff had only mild difficulties with social functioning. (Tr. 23, 104.) As an agency consultant, Dr. Morrow is deemed "highly qualified and expert[] in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); 20 C.F.R. § 416.913a(b)(1). The ALJ was required to consider Dr. Morrow's medical opinion and could rely upon it. *See Mitchell v Comm'r of Soc. Sec.*, 300 F. App'x 563, 568 (2009) (noting that agency consultants can be given greater weight than even treating sources).

And the ALJ did not utilize Dr. Morrow's medical opinion to the exclusion of the remaining evidence, which the ALJ thoroughly canvassed. The ALJ appropriately observed the consistent reports of Plaintiff's successful interactions with examiners, (Tr. 321, 411, 415, 418-419, 423, 429, 599-600, 603), her ability to relate to superiors and follow instructions, (Tr. at 240-241), her at least slight improvement when taking medication, (Tr. 418, 421), and her relationship with family, (Tr. 240). This evidence, along with Dr. Morrow's opinion, gave the ALJ a sufficient basis to depreciate countervailing evidence put forward by Plaintiff.

For the most part, Plaintiff's evidence consists of statements from her or her daughter regarding her social isolation. The record is replete with such statements. S*ee, e.g.*, (Tr. 236) ("She does not do much because she breaks down, cries, is in pain."); (Tr.

20

239) (listing "None" under the "Social Activities" heading); (Tr. 240) ("She does not like to see anyone or have anyone over or go out."). But these statements about pain and other symptoms cannot alone establish disability. *See* 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a). Further, the ALJ acknowledged Plaintiff's self-report on this matter, (Tr. 23), but ultimately found problems with Plaintiff's credibility, (Tr. 23-27), a finding Plaintiff does not directly challenge and which is supported by the notes detailing Plaintiff's comportment at various appointments (as noted above).[4] As such, the ALJ was not required to credit the subjective complaints related to social functioning when crafting the limitations in the RFC.

Perhaps out of recognition that more is needed, Plaintiff relies heavily on an evaluation from Dr. Murphy that Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers was markedly impaired. (Tr. 325); (Doc. 19 at 23.) But as the ALJ noted, Dr. Murphy's report suffers from various flaws that undercut its usefulness. For example, Dr. Murphy found that Plaintiff's ability to follow even simple instructions was moderately affected, (Tr. 325), yet Plaintiff's daughter's report indicated no such problems, (Tr. 240-241). More questionable still was Dr. Murphy's basis for assessing "marked[]" impairment in Plaintiff's social functioning: due to "how disheveled, depressed and even anxious she presented today, let alone, her other medical issues." (Tr. 325.) While his notes confirm her depressed and anxious presence, Dr. Murphy also observed that she

---

[4] It could also be observed that Plaintiff's most recent job, at an accounting firm from January 2011 until September 2013, supports the conclusion that she can function socially in the work environment. (Tr. 209.)

was "pleasant, cooperative," and became "more animated" as the interview progressed, even enjoying answering questions. (Tr. 323.) Tellingly, the notes state that Plaintiff's anxiety level was mild to moderate. (*Id.*) Thus, the ALJ did not err by questioning the value of Dr. Murphy's conclusions.[5]

In sum, the ALJ relied upon substantial evidence for her conclusion, particularly by relying on the psychological consultant. She gave reasons based on record evidence for her treatment of all sources.[6] Accordingly, I recommend that the ALJ's decision be upheld.

## H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Khreiss's Motion for Summary Judgment, (Doc. 19), be **DENIED**, the Commissioner's Motion, (Doc. 21), be **GRANTED**, and the decision of the Commissioner of Social Security (Commissioner) be **AFFIRMED**.

---

[5] Additionally, it should be noted that Plaintiff does not contest the ALJ's treatment of the Global Assessment of Functioning (GAF) score she received. (Tr. 430, 630.) While that score, a 52, could indicate moderate difficulty with social functioning, *see* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000), the ALJ discounted its value because it came from a physician's assistant, *i.e.*, not an acceptable medical source for Plaintiff's claim, 20 C.F.R. § 404.1502(a)(8); 20 C.F.R. § 416.902(a)(8). In any case, reliance on GAF scores has been called into question, *see Spuhler v Colvin*, No. 2:13-CV-12272, 2014 WL 4855743, at *16 (E.D. Mich., June 17, 2014) (discussing caselaw), *Rep. & Rec. adopted in relevant part by* 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014), and the leading diagnostic treatise now rejects their use, Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

[6] In any case, Plaintiff does not describe what additional RFC limitations would result from her view of the evidence. *Cf. Essary v. Comm'r of Soc. Sec.*, 115 F. App'x 662, 667 (6th Cir. 2004) (rejecting plaintiff's argument because she "failed to present evidence of any functional limitations resulting specifically from her obesity").

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 6, 2018                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge


### **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: September 6, 2018                    By s/Kristen Castaneda
                                           Case Manager


24